UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB WESLEY WAXMAN,<br><br>Defendant. | Case No. CR18-175RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 49). Having considered the motion and the record contained herein,[1] the Court finds as follows:

## I.  BACKGROUND

Defendant is a 37-year-old inmate currently incarcerated at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). Dkts. # 49 at 2, # 51 at 2–3. On January 10, 2019, defendant pled guilty to the following offenses:[2] possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

---

[1] The Court finds compelling reasons justify sealing the government's exhibits A through C as they contain defendant's sensitive medical information (Dkt. # 53). The government's motion to seal (Dkt. # 52) is accordingly GRANTED.

[2] Initially, defendant had pled guilty to one additional offense, but the government agreed to dismiss it at the time of sentencing. PSR ¶ 2.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

Dkt. # 29 at 1–2. On April 19, 2019, defendant appeared before the Court for sentencing for these offenses. Dkt. # 43. The Court sentenced defendant to a 66-month prison term and five years of supervised release. Id. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on April 23, 2023. Dkts. # 49 at 2, # 51 at 2. He now moves for compassionate release.

## II.   LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>>>>
>>>> (ii) . . .

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 2

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—

      (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii)    The defendant is—

            (I)     suffering from a serious physical or medical condition,

            (II)    suffering from a serious functional or cognitive impairment, or

            (III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

      (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

> 2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.
>
> 3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.
>
> 4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.
>
> This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

### III.     DEFENDANT'S CIRCUMSTANCES

**A.     Exhaustion Requirement**

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement. Dkts. # 49 at 2, # 51 at 5–6. On June 9, 2020, defendant submitted a request for compassionate release to the Warden, which the Warden denied on July 6, 2020. Dkt. # 51 at 6. Thirty days have lapsed since defendant's request such that the Court finds defendant has exhausted his administrative remedies, and the Court will consider the merits of his motion for compassionate release.

**B.     "Extraordinary and Compelling" Circumstances**

Defendant's motion for compassionate release is based on the following: defendant's risk for developing serious complications if he contracts COVID-19 during his incarceration, defendant's medical conditions and the BOP's alleged "inability to provide sufficient medical care," general conditions at FCI Lompoc, and family circumstances. Dkt. # 49 at 2. The Court addresses each of these rationales in turn and ultimately concludes that defendant fails to establish extraordinary and compelling circumstances.

    **1.     COVID-19 Risk**

The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of August 31, 2021, the BOP reports 509 federal inmates and 479 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 31, 2021). Since the BOP reported its first case in late March 2020, at least 248 federal inmates and five BOP staff members have died from the virus. Id. FCI Lompoc currently reports zero inmates and one BOP staff member with active, positive COVID-19 test results. Id. BOP has classified 567 inmates and 23 staff members at FCI Lompoc as having "recovered" from the virus and three inmates as having died from it. Id. Approximately 67% of the inmate population

at the Federal Correctional Complex in Lompoc (FCC Lompoc) is now vaccinated. See id. (reflecting that 1,332 inmates are vaccinated at FCC Lompoc, which comprises FCI Lompoc and USP Lompoc); USP Lompoc, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lom/ (last visited Aug. 31, 2021) (reflecting a population of 1,288 total inmates at USP Lompoc); FCI Lompoc, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lof/ (last visited Aug. 31, 2021) (reflecting a population of 708 total inmates at FCI Lompoc).

As relates to health conditions that could make a person more likely to get severely ill from COVID-19, defendant alleges that he would be considered a chronic smoker, he has high blood pressure, and he has a body mass index (BMI) close to the obese category. Dkt. # 49 at 3. The government does not respond directly to the allegation that defendant should be classified as a chronic smoker, but defendant presented no evidence of this being an appropriate classification for him. The Court observes that there is no history of smoking listed among the health problems on defendant's June 28, 2021 "Inmate Report," Dkt. # 53 at 24–25, or his July 14, 2021 "Health Problems" list,[3] id. at 39. As for defendant's blood pressure, the government correctly asserts that his medical records do not reflect chronic hypertension. See Dkt. # 53 at 27 (reflecting blood pressure readings from normal to elevated or high ranges), 20 (reflecting a high blood pressure reading and that inmate denied a history of hypertension), 6 (reflecting a more recent blood pressure reading that was not in the high range); see High Blood Pressure Symptoms and Causes, https://www.cdc.gov/bloodpressure/about.htm (May 18, 2021) (last visited Aug. 31, 2021) (explaining the difference between normal, elevated, and high ranges). And although being overweight is a risk factor for COVID-19, People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Aug. 20, 2021) (last visited Aug. 31, 2021), defendant had a BMI of only 25.4 as of April 20, 2021, see PSR ¶ 64 (reflecting a height of 5' 10"), Dkt. # 53 at 6

---

[3] While the Presentence Investigation Report refers to defendant as smoking cigarettes that he stole from his parents or convenience stores in his youth, PSR ¶ 56, this does not establish that defendant was a chronic smoker of cigarettes.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

(reflecting a weight of 177 pounds). This means that around only three pounds separate him from being in the normal weight category rather than the overweight category. See Adult BMI Calculator, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Aug. 31, 2021) (using the BMI calculator with 174 pounds versus 177 pounds). In short, based on defendant's documented medical conditions, defendant is only at the borderline of increased risk of severe illness from COVID-19.

Defendant stated in his initial motion that he "has been or will be receiving a vaccine," Dkt. # 49 at 2, and after the government cited medical records reflecting that defendant refused two different COVID-19 vaccination opportunities, defendant replied that he "refused the vaccine but was willing to take it if medical staff answered questions about his health status." Dkt. # 57 at 2. This Court generally agrees with other courts around the country that a defendant should not receive a reduction in sentence based on risk from COVID-19 while refusing the very thing that would most minimize the risk. See, e.g., United States v. Baeza-Vargas, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."). The overwhelming scientific consensus is that vaccination is a safe and effective way to avoid contracting the virus. Key Things to Know About COVID-19 Vaccines, CDC (Aug. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last visited Aug. 31, 2021).

Defendant argues that he should not be faulted for choosing to decline the vaccine because BOP medical providers were unwilling to answer his questions and discuss potential adverse reactions related to his health conditions, including his Hepatitis C diagnosis. Dkt. # 57 at 3. According to BOP records, when defendant was offered a vaccine on December 31, 2020, he verbally declined, but when medical providers later sought a signed declination, defendant refused to sign because he had "changed [his] mind and [wanted] to receive the vaccine." Dkt. # 53 at 17. BOP records also reflect that on March 3, 2021, defendant declined the vaccine "due to HCV tx," i.e., Hepatitis C transmission, and he refused to sign the form documenting his

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

declination. Dkt. # 53 at 43, 89. Defendant's version of events is consistent with his decision to not sign any declination forms, which would have required him to acknowledge that he had the opportunity to ask questions about the benefits and risks of vaccination, see Dkt. # 53 at 89, an opportunity that he claims he never had. In support of his argument, defendant cites the findings of Dr. Homer Venters, a physician and epidemiologist who submitted a report to the United States District Court for the Central District of California in response to an order to perform an inspection of FCC Lompoc related to its COVID-19 response. Dkt. # 57-1 at 1. Dr. Venters' report observed the following about the experience of inmates at FCC Lompoc:

> Many people reported that when they tried to ask questions about the safety of the vaccine, or posed questions about their own health or medication issues in relation to the vaccine, they were told to either take the vaccine or sign a refusal form. Many of the people who reported refusing the vaccine told me they were willing to take it but simply had questions about their own health status.

Id. at 8. Dr. Venters' report aligns with defendant's allegations regarding his experience. See id. at 9 (reflecting that Dr. Venters spoke with an inmate who had questions about vaccine safety with Hepatitis C and medications, and who was told to take the vaccine or sign the refusal, with no subsequent discussion). That said, even if this Court accepted defendant's argument and decided not to hold defendant's decision to decline vaccination against him under these particular circumstances, this Court still finds that the COVID-19 risk to defendant does not rise to the extraordinary and compelling level. Defendant is only 37 years old, and his documented medical conditions related to COVID-19 put him only at the borderline of increased risk of severe illness from COVID-19. Given defendant's fairly average COVID-19 risk profile, the availability of the vaccine, and the low rates of current cases at FCI Lompoc, the Court finds that defendant's risk related to COVID-19 does not amount to an extraordinary and compelling circumstance.

### 2. Other Medical Conditions and BOP's Ability to Provide Care

The parties agree that defendant has Hepatitis C, pancreatitis, back issues, and broken/rotting teeth.[4] Dkts. # 49 at 3, # 51 at 3. Defendant claims that he has "dealt with torturous conditions,"[5] Dkt. # 49 at 4, and he asserts that it has been "exhaustingly difficult to get necessary care," id. at 6. Defendant provides few specific details related to how conditions at FCI Lompoc have affected his health in particular, with two exceptions. First, defendant alleges that he has "needed dental care since the beginning of [his] incarceration," but he has only "succeeded at getting some of [his] teeth extracted and having [his] partial implant lost." Dkt. # 49-5 at 1. According to defendant, BOP dental care providers "are not doing preventive work and have only been performing emergency extractions for the last 15 months." Id. Second, defendant alleges that it has been "exhaustingly difficult" to get medical care and cites an example where it took him "13 days to be seen after filling out a sick call slip and electronic copout to medical complaining about trouble breathing and pain when [he] took a breath." Id.

With respect to dental care, BOP records from July 22, 2020, refer to defendant having "on and off" tooth pain for a "long time" and being advised that unless an inmate had "severe pain or swelling," treatment would be deferred until COVID-19 restrictions were lifted. Dkt. # 53 at 52. BOP records dated August 20, 2020, reflect that defendant had a pain scale of 8 from a toothache that had begun one to four weeks prior to extraction of defendant's tooth. Dkt. # 53 at 49–51. More recent BOP records indicate that defendant "did not return for dental 1000 call-out" on July 13, 2021, and his "dental hygiene" appointment was rescheduled. Dkt. # 53 at 48.

---

[4] The CDC has not identified any of these conditions as being associated with a higher risk of severe illness from COVID-19. People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Aug. 20, 2021) (last visited Aug. 31, 2021).

[5] Any Eighth Amendment arguments defendant may have regarding the conditions of confinement may be properly brought in a habeas petition or a direct civil claim, not a motion for compassionate release. See United States v. Numann, No. 3:16-CR-00065-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (holding that an Eighth Amendment claim "relating to the manner and conditions of confinement—[is] not properly brought in a motion for compassionate release"); Torres v. Milusnic, 472 F. Supp. 3d 713, 743–46 (C.D. Cal. 2020) (granting provisional class certification to a subset of FCC Lompoc inmates regarding COVID-19 exposure).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

The July 13, 2021 record also reflects that the dental care provider communicated with defendant, see Dkt. # 53 at 48 ("Inmate advised and understands he is supposed to return for dental call-outs once compound reopens"), and that defendant reported a pain scale of 0, id. As for the 13-day wait time defendant cited related to his complaint about pain with breathing in April 2021, defendant did not share how exactly that resolved. A report dated May 4, 2021 summarizes that a medical care provider examined defendant's ribs, identified no rib fracture or lesions, and determined that the visualized lungs were clear. Dkt. # 53 at 86. Thus, it appears that defendant received treatment to evaluate his medical concerns. The Court is sympathetic to defendant, given the pain he suffered before the tooth extraction was completed and when he experienced pain with his breathing. Nevertheless, defendant's experiences do not rise to extraordinary and compelling circumstances where the COVID-19 pandemic has impacted the speed of treatment and defendant's individual complaints appear to have been addressed.

**3.    General Conditions of Confinement**

With respect to defendant's argument regarding general conditions of confinement at FCI Lompoc, including lax enforcement of COVID-19 prevention policies and reduced programming, the Court rejects defendant's reasoning because it is not sufficiently individualized. See, e.g., United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020) ("[G]eneral conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release."), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Butov, No. CR16-226RSM, 2020 WL 5910063, at *5 (W.D. Wash. Oct. 6, 2020) (stating that "[c]ourts have consistently rejected . . . generalized arguments as a basis for compassionate release," e.g., challenges to BOP medical staffing and lack of adequate testing).

**4.    Family Circumstances**

Defendant refers to "family circumstances in Utah" as a basis for demonstrating that extraordinary and compelling reasons exist to release him from custody. Dkt. # 49 at 1–2. According to defendant's parents, defendant's grandmother passed away, and they have taken

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 11

defendant's grandfather into their home. Dkt. # 49-4 at 1. Defendant's parents share that "it would be of great help to have [defendant] home for support." <u>Id.</u> Although the U.S.S.G. § 1B1.13 policy statement is not binding, the Court finds it instructive regarding the type of family circumstances that would constitute extraordinary and compelling circumstances: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children[;] (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). The policy statement does not include family circumstances related to caring for ailing grandparents, though some courts have considered a defendant's need to care for family members beyond those referenced in the policy statement as a basis for compassionate release. <u>See e.g.</u>, <u>United States v. Yoda</u>, No. 15-cr-95 (AJN), 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020) (finding that "the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists"). Even if the Court were to consider care for a grandparent as a potential basis for compassionate release, the Court finds that incapacitation of the family member and the unavailability of other caregivers remain critical to the analysis to ensure that the circumstances are truly extraordinary and compelling. Here, defendant has not discussed the unavailability of other caregivers, nor has defendant established the level of incapacitation of his grandfather. While defendant's grandfather would likely benefit from additional family support, irrespective of his physical condition, this does not constitute an extraordinary or compelling circumstance.

Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

### IV.   CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 49) is DENIED. The government's motion to seal (Dkt. # 52) is GRANTED.

IT IS SO ORDERED.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 12

DATED this 13th day of September, 2021.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 13